LAWRENCE COUNTY.

OCTOBER AND NOVEMBER TERM, 1883, NO. 143.        OCT. 10, 1883.

## Book *v.* Book.

1. A father and son executed an instrument of writing under seal, whereby, for the consideration of $5, the father covenanted and agreed to sell and assure to the son, his heirs, and assigns, a certain tract of land, the father to retain possession, use it in such reasonable manner as not to depreciate its value, and pay the taxes during his life, and upon his death, the son to have the full possession and enjoyment thereof; and whereby the son covenanted to build a new dwelling-house on the land or repair the old one, and after the death of the father, to pay a daughter $150 annually for life, and to allow her to occupy a room in said dwelling. *Held :* That the instrument created a vested interest in the son to be enjoyed in possession *in futuro*, and which could not be divested by the subsequent will of the father.

2. Each party acquired rights and assumed reciprocal obligations, which took effect not upon the death of the father, but immediately upon the execution of the instrument; and upon the breach of the covenants, the parties respectively had a right of action against each other.

3. The contract in this case is not revocable at the pleasure of either party without the assent of the other, and is not testamentary in its character.

4. Turner *v.* Scott, 1 P. F. Sm., 126, distinguished.

Before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

Error to Court of Common Pleas of *Lawrence County.*

Ejectment by Nathan Book against Mary Book, Andrew Wells, tenant in fact, Charles Book, John Book, Dellie Book, Essie Book, minors, by John S. Connor, guardian, for a tract of land in Shenango township, Lawrence county, containing fifty acres sixty-two perches.

Upon the trial in the Court below, the following facts appeared:

A good title to the land in dispute was admitted in Jacob Book, through whom both parties claim. Jacob Book lived on the land with his daughter Jemima, and on December 22, 1875, he and his son, Michael H. Book, executed the following instrument of writing, setting forth:

"That the said Jacob Book, for the consideration of five dollars to him in hand paid by said M. H. Book, the receipt whereof is hereby acknowledged, and for the further consideration hereinafter mentioned, for himself, his

[Book v. Book.]

heirs, executors, and administrators, doth covenant and agree to sell and assure unto said M. H. Book, his heirs, and assigns, all that certain tract or piece of land [describing it] it being the purpose and intent hereby to sell to said M. H. Book the residue of the tract not heretofore bargained to said Aaron Book. The said Jacob Book to retain the possession and enjoyment of said land while he lives; he to use the premises in such reasonable manner so as not to deteriorate or depreciate their value, and he to pay all taxes thereon while he so lives, and upon his death the said M. H. Book to have full and entire possession and enjoyment thereof.

" In further consideration whereof, the said M. H. Book hereby covenants and agrees during the next year (1876) to either build upon said land a comfortable farm dwelling-house, or repair the present dwelling-house upon the land so as to make it reasonably comfortable, and from time to time during the lifetime of said Jacob Book to keep the buildings in such repair as to make them reasonably suitable and comfortable for use, and to have the use of such timber or other materials as may be found upon the land for that purpose, and upon or after the death of the said Jacob Book, he, the said M. H. Book, shall pay to the said Jacob's daughter, Jemima Book, during her natural life, the sum of one hundred and fifty dollars annually, to be paid in semi-annual instalments of seventy-five dollars each, on the first days of April and October of each year, upon the first instalment to pay the proportion of said sum for the time intervening between Jacob's death and said payment, and thereafter to pay seventy-five dollars each successive period of six months.

" Said H. M. Book further agrees that after the death of said Jacob, said Jemima, while she remains unmarried, shall have a room for her use and occupancy (but not to have the power to lease or let the same) in the dwelling upon said farm, or at his option he to provide her a room in another building upon said farm for such use and occupancy. The title to said farm, if not made to said M. H. Book in fee by said Jacob Book in his lifetime, shall be made so to him by said Jacob's legal representatives, so as to assure to said M. H. Book, his heirs, and assigns the land and premises hereinbefore described."

M. H. Book filed a petition in bankruptcy on February 26, 1877, and was adjudged a bankrupt. Nathan Book, the plaintiff, purchased the land from the assignee in

bankruptcy of M. H. Book on September 25, 1877, under which he claims title.

On 7th February, 1878, Jacob Book made an agreement with his son, Aaron Book, in regard to this land, in pursuance of which Aaron Book moved on it with his family, and lived upon it and cultivated it until his death.

By this agreement with Aaron Book, Jacob Book made provision for the support of his daughter Jemima, and retained the use and occupancy of a part of the dwelling-house as long as he lived.

Jacob Book died 10th June, 1881, having, on the 7th February, 1878, executed a last will and testament, by which he revoked all wills previously made, devised the land in dispute in fee simple to his son, Aaron Book.

Aaron died intestate after the making of this will, and a short time before the death of his father. The defendants are children and heirs-at-law of Aaron Book, and, as such, claim title to the land in dispute under the last will of Jacob Book. They have been in possession of the land since the death of Aaron and Jacob Book.

There was evidence on the part of the plaintiff to show that Jacob Book waived the covenant to repair the house.

The defendants submitted points of charge, which, with the answers thereto, are as follows:

*First.* That the paper purporting to be a contract between Jacob Book and M. H. Book, offered in evidence by plaintiff, conveyed or gave to said M. H. Book no present or vested interest or estate in the land described in said contract, and was, therefore, void and ineffectual to give said M. H. Book any estate or interest whatever in said land.

*Second.* That said contract or agreement was testamentary in its character so far as Jacob Book was concerned, and was revocable by him.

*Third.* That the will of Jacob Book, offered in evidence by defendants, revoked said former will in form of a contract, and gave the land in dispute to his son Aaron Book, and defendants are entitled to hold said lands as heirs of said Aaron Book, and under the last will of Jacob Book.

*The Court in Answer:* "The questions of law raised by the first, second, and third points are reserved for future consideration, and the jury instructed *pro forma* to return a verdict for plaintiff, and right reserved to enter judgment for defendants *non obstante veredicto.*"

*Fourth.* If the Court be of opinion that plaintiff is entitled to recover at all, then the verdict must be conditional

that the plaintiff perform all the covenants or stipulations contained in the said contract under which he claims.

Affirmed, and jury so instructed.

The Court thereupon charged the jury as follows:

"This is an action of ejectment. The defendant has submitted certain propositions for instruction by the Court to the jury on questions of law that arise in the case. We dispose of the case in this way: The first, second, and third points raised are reserved by the Court for future consideration. For the present, *pro forma*, we instruct you that the verdict should be for the plaintiffs, reserving the right on these legal propositions so that we may hereafter, on future consideration, enter judgment, notwithstanding your verdict, for the defendants. The fourth point or proposition on part of defendant, we are asked to instruct you that the plaintiff is entitled to a verdict under the instructions of the Court that we have given you, and that verdict should be with certain conditions, and we affirm this, and say to you that there should be a conditional verdict in this case. The counsel for the plaintiffs and defendants have agreed on the conditions that shall be returned as part of your verdict under these instructions.

"Therefore, we instruct you to return a verdict for the plaintiffs for the land described in the writ of ejectment, conditional that the said plaintiffs pay Jemima A. Book, within three months after judgment is obtained, if so, in this case, the sum which may then be due her by the terms of the contract between Jacob Book and M. H. Book under which plaintiffs claim, and give mortgage on said premises with the accompanying bond in the penal sum of $2,000, conditioned to pay said sum when due and pay to said Jemima $75 every six months thereafter during her natural life, said bond to be so limited that payment can be only enforced out of said premises, and to provide that any instalment can be collected if not paid when due.

This is your verdict, and we so record it."

January 12, 1883, verdict for plaintiff, subject to the points reserved, upon which the Court afterwards entered judgment.

Defendants then took out a writ of error, and assigned as error the refusal of the Court to affirm the above points, and the entering of judgment for the plaintiff upon the points reserved.

[Book *v*. Book.]

*Oscar L. Jackson* and *McMichael & McConnell* for plaintiffs in error.

The agreement is testamentary in its character. It vested in M. H. Book no present interest or estate, and is revoked by the subsequent will. It shows an intention to make a disposition of property to take effect after death. This is also shown in the provision for the daughter. By retaining possession, Jacob Book retained the whole property : Silknitter's Ap., 45 Penna., 365 ; Drusadow *v.* Wilde, 63 *Id.*, 170 ; Caldwell *v.* Fulton, 7 Casey, 479 ; Schryer's Est., 2 Brewster, 526 ; 7 Phila., 477 ; Wusthoff *v.* Dracourt, 3 Watts, 240 ; Wilson *v.* McKeehan, 53 Penna., 79 ; Rudebaugh *v.* Rudebaugh, 72 *Id.*, 271 ; 3 Washb., sec. 605 ; 2 Blk. Com., 338, 500 ; 1 Redfield on Wills, 5, 170 ; Habergham *v.* Vincent, 2 Ves. Jr., 204 ; Green *v.* Proude, 1 Mod., 117 ; Hunt *v.* Hunt, 4 N. H., 434 ; Morrell *v.* Dickey, 1 Johns. Ch., 153 ; Turner *v.* Scott., 1 P. F. Sm., 126 ; 2 Blk. Com., 165, 167 ; Rowan's Ap., 1 Casey, 292 ; Frederick's Ap., 2 P. F. Sm., 338 ; Schad's Ap., 7 Norris, 111 ; Frew *v.* Clark, 30 P. F. Sm., 170 ; 13 W. N. C., 401.

*D. B. & E. T. Kurtz* and *R. B. McComb* for defendant in error.

The writing is in the form of a contract containing covenants and agreements by both parties, whereby each became bound. These are to take effect not upon the death of Jacob Book, but immediately upon the signature of the writing, and are not revocable at the pleasure of either party. Revocability is the essence of a testament : 1 Jarmen, 11 ; Mack & Person's Ap., 18 P. F. Sm., 231. A will is unipartite, but this writing is bipartite, and hence not revocable at the will of one only : Johnson *v.* McCue, 10 Casey, 180. The rights under it vested at once, although the full enjoyment of some were postponed. It is not necessary for a deed to convey an immediate interest in possession : Habergham *v.* Vincent, 2 Ves. Jr., 230 ; Meck's Ap., 1 Out., 313. In Turner *v.* Scott, 1 P. F. Sm., 126 ; ·Perry *v.* Scott, *Id.*, 119, and Frederick's Ap., 2 *Id.*, 338, the writing contained no covenant to be performed by the grantor, and there was an express condition that the conveyance was not to take effect until after the grantor's death : Johnson *v.* McCue, 10 Casey, 180 ; Taylor *v.* Mitchell, 6 Norris, 518 ; Brinker *v.* Brinker, 7 Barr, 55 ; Bond *v.* Bunting, 28 P. F. Sm., 210.

[Book v. Book.]

OCTOBER 22, 1883.—The opinion of the Court was delivered by STERRETT, J. :

The sole question in this case is whether the sealed instrument, executed December 2, 1875, by Jacob Book and his son Michael, is a testamentary disposition of the land therein described, or a contract for the sale of the same by the father to his son. If it is a contract, the verdict and judgment are clearly right. On the other hand, if it is a testamentary disposition of the property, it was revoked by the subsequent will of Jacob Book, and the judgment is erroneous.

As was said by Mr. Justice Sharswood, in Bond v. Bunting 28, P. F. Smith, 210: "It is certainly the tendency of all the modern authorities to maintain the general doctrine, which may be stated as a formula, that whenever the party has the power to do a thing (statute provisions being out of the way) and means to do it, the instrument he employs shall be so construed as to give effect to his intention." Tested by this principle, the question is of easy solution. In form, the instrument upon which the contention hinges has all the features of a contract. It is impossible to read it without coming to the conclusion that both parties regarded it as an agreement for sale of the land on terms therein specified. It contains mutual covenants of the parties, by which they respectively bound themselves to the performance of certain things. They each acquired rights and assumed reciprocal obligations which took effect, not upon the death of Jacob Book, but immediately upon the execution of the instrument. By the terms of the instrument, Jacob Book not only became entitled to the consideration money therein mentioned, but he acquired the right to the erection of a new dwelling-house, or the repair of the old one, and thereafter, during his life, to have the buildings so kept in repair, at the expense of his son Michael, as to make them reasonably comfortable and suitable for use. He also secured for his daughter Jennie the right to receive $150 annually, during life, and a room in the mansion-house for her own use while she remained single. On the other hand, Michael acquired the right to take timber and other materials from the land for the building and the repairs he agreed to make; also, the right to require his father to pay all taxes and "to use the premises in such reasonable manner as not to deteriorate or depreciate their value," and, at his father's death, if not before, to have the legal title to the land assured to him by an appropriate conveyance. It is very clear that for the

[Book *v.* Book.]

breach of some of these covenants, at least, the parties respectively would have had a right of action against each other. If Michael, for example, had refused to build the new house, or make the stipulated repairs, it cannot be doubted his father would have had a right of action against him for damages. These and other characteristics of the instrument clearly distinguish it from a will, which, being intended to take effect upon the death of the testator and not before, is ambulatory and revocable during his life ; while, on the other hand, the paper under consideration is a contract between two parties, securing rights and creating obligations which are enforcible by the parties respectively, and not revocable at the pleasure of either without the assent of the other. It is not necessary that a contract for the sale of real estate should vest in the vendee a right of immediate and exclusive possession. It is enough if it creates, as the contract in this case did, a vested interest to be enjoyed in possession, *in futuro.* According to the intention of the parties, as expressed upon the face of the instrument under consideration, it can have effect and operation only as an agreement for the sale of the land.

It is claimed by plaintiffs in error that this case is within the principle recognized in Turner *v.* Scott, 1 P. F. Smith, 126 ; but a cursory examination will show that the cases are widely different. In that case, the instrument was in the form of a deed of conveyance, in which, however, it was expressly provided that the "conveyance is in no way to take effect until after the decease of John Scott, the grantor," and the *habendum* was to have and to hold the premises "after the decease of said John Scott." By the very terms of the instrument, the idea of a presently-vested interest in the grantor was excluded. The words employed are an emphatic declaration that no interest shall be considered as presently conveyed so as to interfere in any way with the life estate ; and the *habendum* is equally explicit in declaring that the estate intended to be conveyed shall not commence until the death of the grantors. It was manifestly a disposition of the property to take effect after death, and not before, while the instrument under consideration took effect immediately and created a vested interest which could not be divested by the subsequent will of Jacob Book.

Judgment affirmed.